UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



_____

ROBIN CHRISTINE AUSTIN,

        Plaintiff,

    v.                                    19-CV-638 (JLS)

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

## DECISION AND ORDER

Plaintiff Robin Christine Austin brings this action under the Social Security Act, seeking review of a determination by the Commissioner of Social Security (the "Commissioner") that she was not disabled. Dkt. 1. Austin moved for judgment on the pleadings. Dkt. 8. The Commissioner responded and cross-moved for judgment on the pleadings. Dkt. 14. Austin replied. Dkt. 15.

For the reasons below, this Court grants Austin's motion in part and denies the Commissioner's cross-motion.

## PROCEDURAL HISTORY

On January 12, 2016, Austin applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Dkt. 8-1, at 2. She claimed she had been disabled since February 9, 2015, due to bipolar disorder, persistent depressive disorder, post traumatic stress disorder, and personality disorder. *Id.* at 2, 4. On February 23, 2016, Austin received notice that her application was denied

by the Social Security Administration. *Id.* at 2. She requested a hearing before an administrative law judge ("ALJ"), which occurred on March 27, 2018. *Id.* the ALJ issued a decision on May 18, 2018, finding that Austin was not disabled. *Id.* Austin appealed the ALJ's decision, and the Appeals Council denied the request for review on March 19, 2019. *Id.*; Dkt. 6, at 1.[1] Austin then commenced this action.

## LEGAL STANDARDS

### I. DISTRICT COURT REVIEW

The scope of review of a disability determination involves two levels of inquiry. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the Court must "decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* The Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes" of the Social Security Act. *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (*quoting Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Second, the Court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citations omitted). The Court does not "determine *de novo* whether [the

---

[1] All further references to the administrative transcript (Dkt. 6) are denoted "Tr. _____." Page numbers for documents contained the transcript correspond to the pagination located in the lower right corner of each page.

claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal

quotations and citations omitted).  But "the deferential standard of review for

substantial evidence does not apply to the Commissioner's conclusions of law."

*Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).  Indeed, if "a reasonable basis

for doubt whether the ALJ applied correct legal principles" exists, applying the

substantial evidence standard to uphold a finding that the claimant was not

disabled "creates an unacceptable risk that a claimant will be deprived of the right

to have her disability determination made according to correct legal principles."

*Johnson*, 817 F.2d at 986.

## II.    DISABILITY DETERMINATION

In denying Austin's application, the ALJ evaluated Austin's claim under the

Social Security Administration's five-step evaluation process for disability

determinations.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a)(2).  At the first step, the

ALJ determines whether the claimant currently is engaged in substantial gainful

employment.  *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If so, the claimant is not

disabled.  *Id.*  If not, the ALJ proceeds to step two.  *Id.* §§ 404.1520(a)(4),

416.920(a)(4).

At step two, the ALJ decides whether the claimant suffers from any severe

impairments.  *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If there are no severe

impairments, the claimant is not disabled.  *Id.*  If there are any severe impairments,

the ALJ proceeds to step three.  *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's severe impairment or combination of impairments meets or equals an impairment listed in the regulations, the claimant is disabled. *Id.*

But if the ALJ finds that no severe impairment or combination of impairments meets or equals any in the regulations, the ALJ proceeds to calculate the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1520(a)(4)(iv), (d)-(e); 416.920(a)(4)(iv), (d)-(e). The RFC is a holistic assessment of the claimant that addresses the claimant's medical impairments—both severe and non-severe—and evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for her collective impairments. *See id.* §§ 404.1545, 416.945. After determining the claimant's RFC, the ALJ completes step four. *Id.* § § 404.1520(e), 416.920(e). If the claimant can perform past relevant work, she is not disabled and the analysis ends. *Id.* §§ 404.1520(f), 416.920(f). But if the claimant cannot perform past relevant work, the ALJ proceeds to step five. *Id.* §§ 404.1520(a)(4)(iv), (f); 416.920(a)(4)(iv), (f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See id.* §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). More specifically, the Commissioner must prove that the claimant "retains a residual

4

functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)).

## DISCUSSION

### I.   ALJ DECISION

The ALJ analyzed Austin's claim for SSI and DIB under the process above. At step one, the ALJ found that Austin had not engaged in "substantial gainful activity" since the alleged onset date of February 9, 2015. Tr. 14. At step two, the ALJ found that Austin had the following severe impairments: depression, bipolar disorder, anxiety with post-traumatic stress disorder (PTSD); personality disorder; and history of substance abuse disorder with active marijuana use. Tr. 14. The ALJ considered the effects of obesity at this step and found obesity in Austin's case to be nonsevere. Tr. 15. At step three, the ALJ found these impairments, alone or in combination, did not meet or medically equal any of the impairments listed in the regulations. Tr. 15-16. At step four, the ALJ determined Austin retains the RFC to perform a full range of work at all exertional levels, but with certain nonexertional limitations. Tr. 17. Specifically, the ALJ found the following nonexertional limitations in Austin's case:

> The claimant is unable to perform any ladder, rope, or scaffold climbing, be exposed to any dangerous work hazards (unprotected heights and exposed moving machinery), or be exposed to any crowded work settings (i.e. work setting where crowds gather around the work station). The claimant is limited to routine, simple tasks not involving a fast assembly quota pace, not requiring more than occasional work interactions with coworkers and supervisors, and not requiring any public contact work.

5

> She will be off task up to three percent of the workday due to symptom
> exacerbations.

Tr. 17.  Completing step four, the ALJ found that Austin is unable to perform any

past relevant work.  Tr. 20.  At step five, relying on the testimony of a vocational

expert and considering Austin's RFC, age, education, and work experience, the ALJ

determined jobs existed in significant numbers in the national economy that Austin

could perform.  Tr. 20.  These occupations included a hospital cleaner and a

landscape specialist.  Tr. 21.  Accordingly, the ALJ found that Austin was not

disabled, as defined in the Act, from the alleged onset date through the date of the

decision.  Tr. 21.

Austin makes two arguments in support of reversal of the Commissioner's

decision.  First, Austin argues that the ALJ erred in granting more weight to the

non-examining opinion of Dr. Bruno over that of her treating psychiatrist, Dr.

McAlevey, in violation of the so-called "treating physician" rule.  Dkt. 8-1, at 7-12.

Second, Austin argues that the ALJ's determination that she would be off-task only

3% of the workday was not based on substantial evidence.  *Id.* at 12-15.  The

Commissioner argues that the ALJ reasonably assessed and weighed the medical

opinions of record, and her factual findings as to that weight was supported by

substantial evidence in the record.  Dkt. 14-1, at 13-18.   The Commissioner also

argues that the ALJ's findings as to Austin's time off-task were reasonable.  *Id.* at

18-19.

## II.    WHETHER THE ALJ ERRED IN WEIGHING MEDICAL OPINIONS

### A. Assessment of Treating Physician Opinion Evidence

As the Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule.  20 C.F.R. § 416.927; *see, e.g., Barco v. Comm'r of Soc. Sec.*, 330 F. Supp. 3d 913, 918 n.2 (W.D.N.Y. 2018).  If a physician has engaged in the primary treatment of the plaintiff, "the SSA recognizes a 'treating physician' rule of deference." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)). Generally, an ALJ determines that a treating physician's opinion is entitled to controlling weight if "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." 20 C.F.R. § 416.927(c)(2); *see Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (citing *Burgess*, 537 F.3d at 128); *Smith v. Berryhill*, 740 F. App'x 721, 724 (2d Cir. 2018) (stating that an ALJ "may set aside the opinion of a treating physician that is contradicted by the weight of other record evidence" or "is internally inconsistent or uninformative").

If the ALJ determines a treating physician's opinion is not entitled to controlling weight, then the ALJ must determine how much weight, if any, to give a treating physician's opinion. *Estrella*, 925 F.3d at 95.  In doing so, the ALJ must "explicitly consider" the nonexclusive *Burgess* factors: (1) the frequency, length, nature, and extent of treatment; (2) the nature and frequency of examination; (3) the amount of medical evidence supporting the opinion; (4) the consistency of the

7

opinion with the remaining medical evidence; (5) whether the physician is a specialist; and (6) whatever other factors tend to support or contradict the opinion. *See Estrella*, 925 F.3d at 95-96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)); 20 C.F.R. § 416.927(c)(1)-(6) (statutory basis for factors assessing weight of treating physician's opinion). Failure to "explicitly consider" the *Burgess* factors is a procedural error. *Estrella*, 925 F.3d at 95-96.

In addition to the treating physician's rule, the ALJ must provide "good reasons" for the decision regarding the weight given to the treating physician's opinion. *Id.* "At both steps [determining controlling weight and then weight generally], the ALJ must 'give good reasons in its notice of determination or decision for the weight it gives the treating [physician]'s . . . opinion.'" *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004)); *see also* 20 C.F.R. § 416.927(c)(2) (statutory basis specifying that the ALJ "will always give good reasons in [their] notice of determination or decision for the weight [they] give your treating [physician]'s medical opinion"). When assigning weight to the treating physician's opinion, if the ALJ has not provided "good reasons," courts cannot conclude that the error was harmless. *Estrella*, 925 F.3d at 96; *see Greek v. Colvin*, 802 F.3d 370, 376 (2d Cir. 2015) ("[T]he ALJ's failure to provide adequate reasons for rejecting [a treating physician's] opinion was not harmless."). But if "a searching review of the record" satisfies the court "that the substance of the treating physician rule was not traversed," the court shall affirm the ALJ's decision. *Estrella*, 925 F.3d at 96 (quoting *Halloran*, 362 F.3d at 32).

### B. The ALJ's Weighing of the Medical Opinions

Austin argues that the ALJ erred in granting more weight to the opinion of the non-examining review physician over the opinion of her treating psychiatrist, Dr. John McAlevey.

On December 1, 2017, Austin's treating psychiatrist Dr. McAlevey provided a medical source statement. Tr. 366-70. By the time of this statement, Dr. McAlevey had treated Austin about four times a year, for about six to seven years. Tr. 366. In this statement he reported a "partial response" to treatment. Tr. 366. In the functional limitation assessment, Dr. McAlevey marked Austin as having mild limitations in understanding, remembering or applying information; moderate limitations in interacting with others; mild limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting and managing oneself. Tr. 368. Dr. McAlevey reported additional mild and moderate limitations in mental abilities and aptitudes to do various levels of unskilled and skilled work. Tr. 369. Dr. McAlevey reported some "marked" limitations in Austin's mental abilities needed for different levels of skilled and unskilled work—these included the ability to sustain an ordinary routine without special supervision, deal with normal work stress, interact appropriately with the general public, and maintain socially appropriate behavior. Tr. 369. The only "extreme" limitations marked were traveling in an unfamiliar place and using public transportation. Tr. 369. Dr. McAlevey anticipated Austin's impairments or treatment would cause her to be absent from work more than four days per month. Tr. 370.

9

Dr. Bruno's consultative opinion dated February 22, 2016 concluded that
Austin's psychiatric impairments were severe but did not meet or equal a listing in
the regulations. Tr. 55.  Dr. Bruno opined that Austin had moderate restrictions of
activities of daily living, moderate difficulties in maintaining social functioning, and
moderate difficulties in maintaining concentration, persistence or pace. Tr. 54.  Dr.
Bruno concluded that "although [Austin] has difficulty relating to others and
dealing with stress [she] retains the mental ability to perform work involving
simple tasks w[ith] brief and superficial contact w[ith] others." Tr. 55.

In weighing this opinion evidence, the ALJ gave the medical source
statement by Dr. McAlevey "some weight." Tr. 19.  The ALJ acknowledged that Dr.
McAlevey's opinion and findings were grounded in "a long-term treating
relationship." Tr. 19.  The ALJ also noted that Dr. McAlevey's conclusions about
Austin's limitations were generally consistent with the examinations in the record,
as well as with Dr. Bruno's assessment. Tr. 19.  After providing these reasons for
crediting this medical opinion, the ALJ then discussed the specific portions of the
opinion that received "little weight." Tr. 19.  For example, the ALJ noted the
inconsistency of Dr. McAlevey's assessment that Austin has moderate functional
limitations in interacting with others but would be "markedly limited in getting
along with coworkers or peers." Tr. 19.  The ALJ also observed that these more
limiting assessments were "inconsistent with the record as a whole" that disclosed
"mild to moderate limitations overall, including treatment records documenting

good response to treatment, full orientation, intake memory, attention, and concentration, and typically stable mood and affect." Tr. 19.

As for Dr. Bruno, the ALJ gave "great weight" to his consultative mental assessment. Tr. 19. The ALJ acknowledged that non-examining opinions generally do not deserve as much weight as those of examining or treating physicians. Tr. 19. However, the ALJ noted a consultative opinion like Dr. Bruno's should get some weight where there are other reasons to reach similar conclusions. Tr. 19. Here, the ALJ provided these reasons: (1) Dr. Bruno's opinion was "internally consistent" with the report and medical review; and (2) the opinion was "consistent with the evidence as a whole," which showed a "history of mental health abnormalities, but overall intact memory, concentration, attention, [and] thought processes," as well as "a good response to treatment and medications." Tr. 19.

### C. The ALJ Properly Assessed the Opinions in this Case, and Remand Is Not Required on this Basis

Upon review of the record, including opinions and treatment notes, this Court is satisfied that the ALJ adequately addressed and set forth the reasons for the weight she assigned to the opinions, in compliance with the treating-physician rule. Thus, the Court concludes the ALJ's assessment of the opinions was proper.

Before explaining her assigned weight for each medical source opinion, the ALJ explicitly listed the factors she was required by regulations to consider in her analysis. Tr. 19 (listing the six factors). More importantly, the ALJ's subsequent discussion of each opinion makes clear she considered these factors in her

11

assessments, rather than just providing conclusory explanations.  Tr. 19.

Regarding Dr. Bruno's consultative opinion, the ALJ acknowledged that often non-

examining, consultative opinions should not be given greater weight than a treating

physician's opinion.  Tr. 19.  But the ALJ also provided reasons for giving weight

here, including consistency with the report and medical review and consistency with

the evidence as a whole.  Tr. 19; *see, e.g.*, *Smith v. Colvin*, 17 F. Supp. 3d 260, 268

(W.D.N.Y. 2014) ("[T]he opinions of consulting sources 'may constitute substantial

evidence if they are consistent with the record as a whole.'")

     Similarly, the ALJ's explanation for granting "some weight" to Dr. McAlevey

reveals that the ALJ sufficiently considered the *Burgess* factors in her assessment

of that opinion.  The ALJ specifically noted the "long-term treating relationship" Dr.

McAlevey shared with Austin—a key component in the reasoning behind the

treating-physician rule.  Tr. 19.  The ALJ also noted that many of Dr. McAlevey's

findings in the opinion were consistent with his examinations of Austin and with

Dr. Bruno's consultative assessment.  Tr. 19.  Rather than a conclusory statement

for discounting this opinion, the ALJ specifically highlighted the exact parts of the

opinion that merited less weight, and explained why.  Tr. 19.  The ALJ found the

checkmark assessments of "marked" and "extreme" limitations to be inconsistent

with the other portions of the opinion, indicating related "moderate" functional

limitations, as well as inconsistent with the record as a whole.  Tr. 19.  The ALJ

properly rejected these specific opinions as unsupported by the record, including Dr.

McAlevey's own treatment notes.  *See, e.g.*, *Pollino v. Comm'r of Soc. Security*, 366

F. Supp. 3d 428, 435 (W.D.N.Y. 2019) (concluding the ALJ properly rejected check-box portions of a doctor's opinion because there was no explanation for these findings and they were contradicted by the doctor's own assessment that the claimant had only mild or moderate limitations for mental functioning); *Goodale v. Astrue*, 32 F. Supp. 3d 345, 358 (N.D.N.Y. 2012) (ALJ did not err by giving little weight to treating physician's opinion that used a "check box" form that counsel had provided and was "clearly contradicted by the contemporaneous treatment notes"). Thus, the Court concludes that the ALJ properly considered the *Burgess* factors and provided good reasons for her assignment of weight to the opinions, and the treating-physician rule was not traversed.

Even if the ALJ had not conducted a meaningful analysis of the *Burgess* factors, the Court has reviewed the medical opinion evidence in the record and finds the ALJ's assessment is supported by substantial evidence. As the ALJ correctly noted, the record as a whole supports mild to moderate limitations—the treatment notes reflect a good response to treatment, good to fair insight/judgment, full orientation, intake memory, attention, and concentration, and typically stable mood and affect. *See generally* Tr. 327-330, 373-421. On August 25, 2017, for example, Dr. McAlevey reported that Austin had logical and rational thought process, an "okay" mood, a euthymic and congruent affect, intact memory and cognition, and fairly good insight and judgment. Tr. 394-95. These observations were repeated in treatment notes after Dr. McAlevey gave his December 2017 medical source statement. Tr. 403-415. The ALJ's decision contains a thorough analysis of these

13

treatment records and how Austin's treatment has had some success in managing her mental health symptoms.  Tr. 18-19.

Finally, Austin's argument that Dr. Bruno's opinion is stale and based on an incomplete record is without merit.  Dkt. 8-1, at 11-12.  A medical opinion may be stale if it does not account for the claimant's deteriorating condition. *Carney v. Berryhill*, No. 16-CV-269-FPG, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017); *see also Camille v. Colvin*, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016) (quoting *Griffith v. Astrue*, No. 08-CV-6004, 2009 WL 909630, at *9 n.9 (W.D.N.Y. July 27, 2009)) ("It is true that medical source opinions that are 'conclusory, stale, and based on an incomplete medical record' may not be substantial evidence to support an ALJ finding.").  But Austin points to no evidence indicating her condition has deteriorated or altered significantly since the date of that opinion.  A medical opinion is not stale simply based on its age—a more dated opinion may constitute substantial evidence if it is consistent with the record as a whole.  *See Carney*, 2017 WL 2021529, at *7 ("Dr. Liu's opinion was not stale . . . because it was consistent with Dr. Liu's clinical examination and with the record as a whole.").  As in *Camille*, while Dr. Bruno's opinion was based on only part of the overall record, the treatment notes and opinions in the record before and after Dr. Bruno's opinion reflect substantially similar limitations and findings—and Austin has pointed to no evidence suggesting that her condition significantly deteriorated so as to render those opinions stale.  104 F. Supp. 3d at 344.

In sum, it is the role of the ALJ to "weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998); *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). The ALJ did this and rendered her decision in accordance with the treating physician rule.

### III.   WHETHER THE ALJ'S RFC DETERMINATION THAT AUSTIN WOULD BE OFF TASK ONLY THREE PERCENT OF THE WORKDAY IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Austin argues that the ALJ's determination that she would be off-task only three percent of the workday was not based on substantial evidence.  Dkt. 8-1, at 12.  In response, the Commissioner argues that the ALJ's findings as to Austin's time off-task were reasonable.  Dkt. 14-1, at 18-19.

A claimant's RFC is the most she can do despite her limitations.  20 C.F.R. § 404.1545(a)(1).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis"—that is, eight hours a day, for five days a week, or an equivalent work schedule.  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)).  The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Specific RFC assessments, such as percentage of time off-task, should be based on evidence in the record rather than an "ALJ's own surmise." *Wouters v. Comm'r of Soc. Sec.*, No. 29-cv-610-FPG, 2020 WL 2213896, at *2 (W.D.N.Y. May 7, 2020) (quoting *Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (summary order)); *see also Elder v. Comm'r of Soc. Sec.*, No. 18-CV-1196, 2019 WL 6320355, at *6 (W.D.N.Y. Nov. 26, 2019).

In *Wouters*, the Court found the ALJ's conclusion that the claimant would be off task five percent of the time was not supported by substantial evidence. 2020 WL 2213896, at *2-3. While the ALJ otherwise provided a detailed and well-reasoned RFC, the Court concluded that the ALJ pointed to no evidence in the record to support the specific time off-task limitation. *Id.* at *3. Similarly, in *Elder*, the court noted that none of the opinions or treatment records indicated a specific limitation with respect to the amount of time on or off task—only the ALJ imposed a specific time frame—five minutes per hour—on the claimant's ability to stay on task. 2019 WL 6320355, at *6. In that case, the court was also troubled because the vocational expert's testimony that an off-task restriction of six minutes per hour would be "work preclusive." *Id.*; *see also Cosnyka*, 576 F. App'x at 46 ("Because there is no substantial evidence for the ALJ's six-minutes per hour formulation, and this formulation as crucial to the vocational expert's conclusion that there were jobs [the claimant] could perform, we cannot uphold the ALJ's decision to reject [his] claim for benefits.").

16

Here, based on the ALJ's weighing of the opinion evidence, the ALJ's determination that Austin would be "off task up to three percent of the workday due to symptom exacerbations" is not supported by substantial evidence. As discussed above, the ALJ concluded that Dr. McAlevey's findings of mild to moderate functional limitations were consistent with his examinations and the record generally. Tr. 19. And the ALJ gave "great weight" to Dr. Bruno's assessment, which included moderate restrictions of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. Tr. 19, 54. Austin's testimony, while not fully credited regarding the severity of her symptoms, suggested she had panic attacks and difficulty concentrating. Tr. 39, 42-43. Accepting the ALJ's weighing of the opinions and Austin's testimony, those opinions and testimony generally support certain functional limitations due to Austin's mental health status.

But nowhere is there an opinion or testimony providing that Austin would be off-task up to three percent of the workday due to her symptoms—as in *Wouters* and *Elder*, this specific number came solely from the ALJ. *Wouters*, 2020 WL 2213896, at *2-3; *Elder*, 2019 WL 6320355, at *6; *cf. Mohamed v. Saul*, Civ. No. 3:18CV02015(SALM), 2019 WL 3928585, at *11 (D. Conn. Aug. 20, 2019) ("The fact that the ALJ assigned a particular percentage range (0-10%) to illustrate [the claimant's] limitation [of working at a slightly slower than average pace] does not undermine the fact that the ALJ's finding was supported by substantial evidence.")

17

The more general limitations expressed by the opinions do not, without more, translate directly to a finding that Austin would be off-task three percent of the time. The ALJ did not explain or tether this specific limitation to any particular medical opinion evidence, which it should do on remand if the evidence exists. *Wouters*, 2020 WL 2213896, at *3. Thus, upon review of the record, the Court cannot conclude that this specific RFC assessment is based on substantial evidence.

Further, the Court concludes this error was not harmless. The vocational expert testified that off-task behavior of more than ten percent would "eliminate" the work available. Tr. 48-49. In other words, if Austin's actual off-task limitation were slightly higher than three-percent, then she may be considered disabled. *Wouters*, 2020 WL 2213896, at *3; *see also Cosnyka*, 576 F. App'x at 46 ("The record is unclear as to the length of individual breaks [the claimant] would need, and it is unclear as to the availability of jobs that would accommodate whatever beaks he needed."). Thus, because the three-percent off-task formulation was not supported by substantial evidence, and this formulation was crucial to the vocational expert's conclusion that there were jobs Austin could perform, the Court cannot affirm the ALJ's decision.

## CONCLUSION

For the reasons stated above, Austin's motion for judgment on the pleadings, (Dkt. 8), is **GRANTED** in part and **DENIED** in part, and the Commissioner's cross motion for judgment on the pleadings, (Dkt. 14), is **DENIED**.  The decision of the Commissioner is **VACATED**, and the matter is **REMANDED** for further administrative proceedings consistent with this decision.


SO ORDERED.

Dated:          September 21, 2020
                Buffalo, New York


_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

19